17496

Thurman BATCHELOR, Appellant, v. AMERICAN HEALTH INSURANCE COMPANY, Respondent

(107 S. E. (2d) 36)

*Rogers W. Kirven, Esq.,* of Florence, *for Appellant,*

*Messrs. Willcox, Hardee, Houck & Palmer, W. Laurier O'Farrell* and *William H. Blackwell,* of Florence, *for Respondents,*

February 5, 1959.

Moss, Justice.

American Health Insurance Company, the respondent herein, did, on April 9, 1957, issue and deliver to Thurman W. Batchelor, the appellant herein, a "Hospital Expense Policy" by the terms of which it agreed to insure the appellant against hospital and doctor expenses, within the limitations of the policy, incurred as a result of an accident. The complaint alleges that while the policy was in force and effect, the appellant, on April 29, 1957, while riding in a private automobile, was injured, causing hospital and doctor expenses in the amount of $1,077.21. It is alleged that the appellant is entitled to recover under the terms of the aforesaid policy the sum of $1,000.00.

The respondent, by its amended answer, admitted the execution and delivery of the aforesaid policy. It defended on the ground that the appellant had made false representations in his application to the respondent in answers to questions concerning other insurance. The respondent also alleged that the appellant had obtained numerous other policies of hospital insurance, which together would provide benefits in an amount greatly in excess of his earnings, thereby making it profitable for the appellant to become hospitalized. The respondent also asserts that the obtaining of this and numerous other policies constitutes a wagering contract and was contrary to public policy. The respondent made tender of the premiums and prayed judgment for the rescission of the policy contract.

This action was tried before the Honorable W. T. McGowan, Jr., Presiding Judge of the Florence County Court and a jury, at the 1958 May term of said Court, and re-

sulted in a directed verdict in favor of the respondent on the ground that the obtaining of the policy involved in this action, and the other policies, constitutes a wagering contract, and that such was contrary to the public policy of this State. The appellant made an unsuccessful motion for a new trial. The case is before this Court upon due notice of intention to appeal. The exceptions of the appellant challenges the ruling of the trial Judge, and asserts that there was error in directing the verdict for the respondent on the ground that when the appellant obtained this, and other hospital insurance policies, that such constitutes a scheme or venture to enter into wagering contracts, which was contrary to public policy.

The testimony shows that the appellant had a gross weekly income of $65.00 and take home pay of $53.00 from his employment with Armour & Company. The testimony shows that in June 1952, upon application of the mother of the appellant, a family group hospital and surgical expense policy was issued by the Reserve Life Insurance Company. In January 1954, John Hancock Mutual Life Insurance Company also issued upon application of Armour & Company, the employer of the appellant, without expense to him, a hospital expense and surgical operation policy. It also appears that between March 25, 1957 and May 1, 1957, the appellant purchased eight other policies covering either hospital and surgical expenses or hospital expenses only. The respondent asserts that a calculation of the benefits provided by the various policies shows that if the appellant was hospitalized he would receive approximately the sum of $745.00 per week, plus additional benefits for certain medical and hospital charges. It also asserts that since there is such a great disproportion between the amount that could be recovered under the various contracts of insurance and the loss which could be sustained, that the only reasonable inference to be drawn therefrom is that the appellant was engaged in a scheme or venture which made of all the insurance agreements wagering contracts and that such were void as being against public policy.

It appears from the testimony that L. C. Whitlock, an agent of the respondent, contacted the appellant and sold him the policy in question. It appears from the testimony of this agent that he solicited the appellant upon the suggestion of one Gerald Windham, who was an agent for Interstate Life Insurance Company, and who had also sold the appellant a hospital policy. This agent testified that the appellant told him that he had hospital insurance with John Hancock Insurance Company, this being the policy issued upon application of Armour & Company. The appellant testified of his conversation with the agent of the respondent when he was solicited for the policy here in question:

"Q. Tell what further conversation you had with Mr. Whitlock at that time? A. Well, I told him I didn't need any insurance that I had all the insurance I needed, and he says, he told me I never could have too much insurance, he said that if you have an accident or something who would pay your bills when you were laid out of work, so we discussed the insurance and I told him I had several other policies, and also had a group policy where I worked and he asked me who I had the group with and I told him I had it with John Hancock, and he said he was going to write it up and for me to give him a $5.00 deposit and if he could get it through he would bring the policy back to me.

"Q. Now, you told him you had other insurance other than the John Hancock insurance? A. Yes, sir; I told him I had several other policies.

"Q. He knew that Gerald Windham had sold you the Interstate, didn't he? A. He said Gerald told him he had already sold me a policy."

This court has held that everyone has an insurable interest in his own life. *Ellison v. Independent Life & Accident Ins. Co.*, 216 S. C. 475, 58 S. E. (2d) 890, 29 Am. Jur., Insurance, para. 355, at page 312. Hence, the appellant in this case had a right to insure himself against such hospital, medical and surgical expenses as he might incur in the event of injury. The respondent, in its brief, ad-

mits that no individual policy, standing alone, would be considered a wagering contract, but it asserts that when a series of policies are obtained in a very short time, which together provide benefits grossly out of proportion to the risk involved, a scheme or plan to engage in a wagering or gambling venture becomes apparent.

In *Weeks v. New York Life Ins. Co.*, 128 S. C. 223, 122 S. E. 586, 587, 35 A. L. R. 1482, this Court said: ·

"Public policy has been aptly described by one of our judges as 'a wide domain of shifting sands.' Gage, J., in *Mc-Kendree v. Southern State Life Insurance Co.*, 112 S. C. 335, 99 S. E. 806. The term in itself imports something that is uncertain and fluctuating, varying, with the changing economic needs, social customs, and moral aspirations of a people. Story on Contracts (5th Ed.) [(3)], 675; 23 A. & E. Ency. (2d Ed.), 456. For that reason it has frequently been said that the expressive (expression) public policy is not susceptible of exact definition. But for purposes of juridicial application it may be regarded as well settled· that a state has no public policy, properly cognizable by the courts, which is not derived or derivable by clear implication from the established law of the state, as found in its Constitution, statutes, and judicial decisions."

In the case of *Grant v. Butt,* 198 S. C. 298, 17 S. E. (2d) 689, 693, this Court adopted as its judgment an order of the Special Circuit Judge, who was the Honorable George Bell Timmerman, now a distinguished United States District Judge, and approved the following pronouncement:

"It seems to be well established in this State that contracts having for their object anything that is obnoxious to the principles of the common law, or contrary to statutory enactments or constitutional provisions, or repugnant to justice and morality, are void; and that the Courts of this State will not lend aid to the enforcement of contracts that are in violation of law or opposed to sound public policy. *Magwood v. Duggan,* 1 Hill 182; *Craig v. U. S. Health & Accident*

*Ins. Co.,* 80 S. C. 151, 61 S. E. 423, 18 L. R. A., N. S., 106 128 Am St. Rep. 877, 15 Ann. Cas. 216."

In *Crosswell v. Connecticut Indemnity Association,* 51 S. C. 103, 28 S. E. 200, 205, this Court said:

"A sound public policy requires the enforcement of contracts deliberately made which do not clearly contravene some positive law or rule of public morals. It is surely not a sound policy to permit insurers to contract to insure the lives of persons, receive premiums therefor as long as the insured, the beneficiary or the assignee, will continue to pay, and then, when the time comes for the insurers to pay what they agreed to pay, allow them to escape their contract on the ground of want of insurable interest in the life insured, unless it clearly appears that such contracts are pernicious and dangerous to society. Courts should not annul contracts on doubtful grounds of public policy. In such matters it is better that the legislature should first speak."

The respondent asserts that this Court should deny the appellant his right to recover on the policy of insurance in question because this policy contract, construed with other hospital insurance policies held by the appellant, constituted wagering contracts. A wager policy of insurance has been defined as a pretended insurance, where the insured has no interest in the thing insured and can sustain no loss by the happening of the misfortunes insured against. 29 Am. Jur., Insurance, para. 319, at page 290. A wager policy has also been defined as one made when the insured has no insurable interest. 2 Bouv. Law Dict., Rawle's Third Revision, page 3417. The appellant in this case had an insurable interest in his own health and he could sustain a loss by the happening of the event against which the respondent had issued its policy of insurance.

In 1947 the General Assembly of this State enacted into law what was Section 37-491 of the 1952 Code of Laws, which provided as follows:

"An optional standard provision as to other insurance and reduction of indemnity shall be in the following form:

"If the insured shall carry with another company other insurance covering the same loss without giving written notice to the insurer, then in that case the insurer shall be liable only for such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premiums paid as shall exceed the *pro rata* for the indemnity thus determined."

It is apparent from the foregoing section of the Code that an insurance company had the right, where the insured had insurance with other companies covering the same loss, at its option, to insert the foregoing *"pro rata clause"* thereby providing that it would not be liable for any greater proportion of any loss which may occur than the amount named in the policy shall bear to the entire amount of insurance.

Section 37-491, of the 1952 Code of Laws, continued in force and effect until it was repealed by the General Assembly of this State on March 31, 1956, and there was enacted into law at the time of said repeal what is section 37-471.19 of the Code of Laws of South Carolina, as is contained in the 1958 Cumulative Supplement, the following:

"Insurance With Other Insurers. If there be other valid coverage, not with this insurer, providing benefits for the same loss on a provision of service basis or on an expense incurred basis and of which this insurer has not been given written notice prior to the occurrence or commencement of loss, the only liability under any expense incurred coverage of this policy shall be for such proportion of the loss as the amount which would otherwise have been payable hereunder plus the total of the like amounts under all such other valid coverages for the same loss of which this insurer had notice bears to the total like amounts under all valid coverages for such loss, and for the return of such portion of the premiums paid as shall exceed the *pro rata* portion for the amount so determined. For the purpose of applying this provision when other coverage is on a provision of service basis, the 'like amount' of such other coverage shall be taken as the amount

which the services rendered would have cost in the absence of such coverage.

"(If the foregoing policy provision is included in a policy which also contains the next following policy provision, there shall be added to the caption of the foregoing provision the phrase '—Expense Incurred Benefits.' The insurer may, at its option, include in this provision a definition of 'other valid coverage,' approved as to form by the Commissioner, which definition shall be limited in subject matter to coverage provided by organizations subject to regulation by insurance law or by insurance authorities of this or any other state of the United States or any province of Canada, and by hospital or medical service organizations, and to any other coverage the inclusion of which may be approved by the Commissioner. In the absence of such definition such term shall not include group insurance, automobile medical payments insurance, or coverage provided by hospital or medical service organizations or by union welfare plans or employer or employee benefit organizations. For the purpose of applying the foregoing policy provision with respect to any insured, any amount of benefit provided for such insured pursuant to any compulsory benefit statute (including any workmen's compensation or employer's liability statute) whether provided by a governmental agency or otherwise shall in all cases be deemed to be 'other valid coverage' of which the insurer has had notice. In applying the foregoing policy provision no third party liability coverage shall be included as 'other valid coverage.')"

If the respondent desired to limit its liability to the appellant on a *"pro rata"* basis, it could have included in the policy the provision just quoted. There is nothing in the extensive insurance code enacted by the General Assembly at its 1956 session which invalidates a hospital insurance policy because of the failure to include the provision with reference to "insurance with other insurers." There is no established public policy which prevents one from purchasing as many hospital expense policies as one may desire.

This is so because there is no prohibitory statute, and there are no judicial decisions establishing a public policy which prevents such.

The freedom to contract is not unlimited because the lawmaking branch of the government may impose such limitations as can be reasonably considered to be for the public safety or morals, but the General Assembly of this State has not undertaken to forbid such a contract as the parties here made. We would not be warranted in holding the contract here made to be void as against public policy unless it was in contravention of such public policy as is found either in the constitution, the statutes or the judicial decisions of this State. We think the lower Court was in error in concluding and holding that the contract in question constituted a wagering contract and void as being against public policy.

We have heretofore pointed out that there was no clause in any of the policies here involved prohibiting additional hospital insurance. Thus, in the absence of policy restrictions, the rule is that a person having insurable interest may insure such interest in whatever amount and in as many companies as he desires. Appleman on Insurance, Vol. V, sections 3052 and 3055.

The respondent calls our attention to the case of *Hack v. Metz,* 173 S. C. 413, 176 S. E. 314, 95 A. L. R. 196. The factual situation there is not apposite to the case here. Nothing we have here said conflicts with the holding in that case.

The answer of the respondent sets up several other defenses to the action brought by the appellant. These other defenses were not in issue before this Court. These issues are for determination by the lower Court upon a retrial of this case.

Judgment of the lower Court is reversed and this case remanded for a new trial.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.