601 S.E.2d 342

**Phillip W. WHITE, individually, and Little General Food Stores, Inc., Petitioners,**

v.

**J.M. BROWN AMUSEMENT CO., INC., Respondent.**

No. 25849.

Supreme Court of South Carolina.

Heard June 22, 2004.
Decided Aug. 9, 2004.

Daniel L. Draisen, Krause & Moorhead, PA, of Anderson, for Petitioners.

Amy G. Richmond, of Love, Thornton, Arnold & Thomason, V. Clark Price, and Dana M. Lahey, both of Roe Cassidy Coates & Price, PA, all of Greenville, and Wade S. Weatherford, III, of Gaffney, for Respondent.

Chief Justice TOAL:

The court of appeals reversed the trial court's grant of summary judgment to Phillip W. White and Little General Food Stores, Inc. (collectively "White"). *White v. J.M. Brown Amusement Co.*, Op. No.2003–UP–161 (S.C. Ct.App. filed February 27, 2003). We granted White's petition for a writ of certiorari to review that decision and now reverse.

## FACTUAL/PROCEDURAL BACKGROUND

In 1992, White and J.M. Brown Amusement Co. ("Brown") entered into a contract giving Brown exclusive rights to place "certain coin-operated amusement machines" in thirteen of White's stores—which Brown did—all located in Anderson and Oconee counties. The contract was for a term of fifteen years. Under the contract, White agreed "not to allow other machines on the premises without the express written consent of [Brown]."

In 1993, the Legislature enacted a local option law as part of the Video Game Machines Act, permitting counties to hold an individual referendum to determine whether cash payouts for video gaming should remain legal. Act No. 164, Part II, § 19G, 1993 S.C. Acts 1138–1139, formerly codified at S.C.Code Ann. §§ 12–21–2806 and –2808 (repealed effective July 1, 2000). As a result of local referenda held in November 1994, twelve counties, including Oconee and Anderson, voted to ban cash payouts. The South Carolina Department of Revenue revoked the licenses required to operate the machines Brown had placed in White's stores, effective July 1, 1995, as required by the Act. Consequently, Brown removed the video poker machines from White's stores. Brown did not replace the machines with any other coin-operated amusement machines.

In November 1996, this Court struck down the local option law contained in the Act as unconstitutional special legislation. *Martin v. Condon*, 324 S.C. 183, 478 S.E.2d 272 (1996). Given this Court's ruling, Brown planned to return the video poker machines to White's store, but White informed Brown that the contract was no longer valid. White then initiated the underlying action, seeking to have the contract declared void and unenforceable so that he would be free to sign a contract with

another provider of legal video and amusement machines. White also alleged that Brown breached the contract by removing the machines from White's stores and failing to replace them with appropriate machines.

Approximately one month after filing suit, White entered into an agreement with Hughes Entertainment, Inc. (Hughes), giving Hughes exclusive rights to place all video game terminals and all coin operated music and amusement machines in twelve of the same stores listed in the Brown contract.

In its answer to the complaint, Brown denied breaching the contract, arguing that the machines were removed from White's stores in response to Court and legislative proceedings which cast doubt upon the legality of certain coin operated machines such as those supplied by [Brown] to [White] under the terms of the contract. In addition, Brown asserted counterclaims for breach of contract and breach of contract accompanied by a fraudulent act because White contracted with Hughes for placement of machines in White's stores.

A representative of Brown testified in deposition that the subject matter of the contract was the outlawed video poker machines—the only type of machines Brown handled. White testified in deposition that he expected Brown to install other types of legal video games after the video poker machines were outlawed, even though White also testified that the contract involved video poker machines, and he never asked Brown (from July 1995 to November 1996) to place other types of machines in his stores.

White moved for summary judgment on Brown's counterclaims. The trial court granted White's motion, finding that the contract involved the placement and operation of outlawed video poker machines.[1] The trial court concluded that as a matter of law, the contract between White and Brown became

---

1. The parties debate the meaning of the contractual term certain coin-operated amusement machines. We conclude that the trial court correctly relied on the deposition testimonies of White and the Brown representative to determine that this was a typical contract involving video poker machines at convenience stores, a type of contract common in South Carolina at the time. The parties debate whether the judge's finding was the unappealed law of the case, or whether the contract also contemplated Pac–Man video games or the like. Again, we find that it was a contract for video poker machines.

void and unenforceable as of July 1, 1995, when video poker machines first became illegal in Anderson and Oconee counties. The trial court subsequently denied Brown's motion to reconsider.

Brown appealed and the court of appeals reversed. The court of appeals reasoned that because this Court had struck down the local option law and referenda as unconstitutional, the validity of the contract must be analyzed as if the local option law had never been enacted, the referenda never held, the county ordinances banning video poker payouts never passed, and the machine licenses never revoked by the Department of Revenue.

We granted certiorari to resolve the following question:[2]

Did the court of appeals err in reversing the trial court's grant of summary judgment to White, where the trial court found that the contract was void and unenforceable as of July 1, 1995, due to local referenda banning the type of video poker machine that formed the subject matter of the contract?

## LAW/ANALYSIS

### Standard of Review

When reviewing the grant of summary judgment, the appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP. *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law. Rule 56(c), SCRCP; *Tupper v. Dorchester County,* 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997). In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may

2. White's two questions actually present only one question. We also note that this case does not raise any issue under the Contract Clause contained in the state or federal constitutions, which prohibits the state from passing laws which impair the obligation of contracts. We have rejected such a claim in connection with legislative control of video poker gambling. *Rick's Amusement, Inc. v. State,* 351 S.C. 352, 570 S.E.2d 155 (2001); *Mibbs, Inc. v. S.C. Dept. of Revenue,* 337 S.C. 601, 524 S.E.2d 626 (1999).

be drawn from the evidence in the light most favorable to the non-moving party. *Manning v. Quinn*, 294 S.C. 383, 385, 365 S.E.2d 24, 25 (1988).

## Discussion

White asserts the court of appeals erred because the trial court correctly held that as a matter of law, the parties' contract became void and unenforceable as of July 1, 1995, the date it became illegal to operate the video poker machines. White also contends that the contract was not revived when the local option law was held unconstitutional. We agree.

██ The general rule, well established in South Carolina, is that courts will not enforce a contract when the subject matter of the contract or an act required for performance violates public policy as expressed in constitutional provisions, statutory law, or judicial decisions. *Berkebile v. Outen*, 311 S.C. 50, 53–54, 426 S.E.2d 760, 762 (1993) (stating [a]n illegal contract has always been unenforceable); *Batchelor v. American Health Ins. Co.*, 234 S.C. 103, 107 S.E.2d 36 (1959) (noting that contracts violating public policy as expressed in constitutional provisions, statutes, or judicial decisions are void).

██ When a contract is originally legal, but performance becomes illegal due to a change in the law, any subsequent performance is against public policy and the party who has agreed to perform is excused from doing so. Some courts analyze such a situation in terms of impossibility of performance, although performance is not literally impossible because it could be done if it were legal. Other courts simply conclude that the duty to perform is excused or discharged because performance would violate public policy as expressed in constitutional provisions, statutes, or judicial decisions. 8 *Williston on Contracts* § 19:35 (4th ed.1998); 14 *Corbin on Contracts* § 76.1 (2001); *see also Restatement (Second) of Contracts* § 264 (1981) (if the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made); *Restatement (First) of Contracts* § 458 (1932) (contractual duty is discharged where performance is subsequently prevented or prohibited by con-

stitutional provision, statute, ordinance, judicial decision, or administrative order); Annot., *Modern Status of the Rules Regarding Impossibility of Performance as Defense in Action for Breach of Contract*, 84 A.L.R.2d 12, § 7 (1962).

■ In the present case, both parties were performing as required under the contract until performance of the contract became legally impossible for two reasons. First, the subject matter of the contract—certain video poker machines—became illegal as of July 1, 1995, under the local option law and the resulting local referenda. Second, as mandated by the local option law, the Department of Revenue revoked the licenses required to legally possess and use the machines. Consequently, both parties' duty to perform under the contract was discharged, and after that point, White and Brown were free to enter a new contract involving legal machines or seek other contractual relationships.

■ Moreover, because the subject matter of the contract became illegal, the contract itself was invalidated or rendered dead. Therefore, the next issue we must address is whether the dead contract was revived when this Court deemed the local option law—which permitted counties to hold an individual referendum to determine whether cash payouts for video gaming should remain legal—unconstitutional.

The court of appeals implicitly concluded that the formerly dead contract was indeed revived by the death of the invalid law, when the court stated [i]t is as if the law had never been passed and the referenda never held. In support of its conclusion, the court of appeals relied solely on *Atkinson v. Southern Express Co.*, 94 S.C. 444, 78 S.E. 516 (1913). In that case, the Court stated the following:

> When a statute is adjudged to be unconstitutional, it is as if it never had been. Rights cannot be built up under it; contracts which depend upon it for their consideration are void; it constitutes a protection to no one who has acted under it; and no one can be punished for having refused obedience to it before the decision was made.

*Id.* at 453, 78 S.E. at 519 (citations and internal quotation marks omitted). Based on this precedent, the court of appeals concluded that the ordinance purporting to ban the video

poker machines had no legal force and therefore did not have a legal effect on the parties' contract.

Given the court of appeals' decision, Brown asserts that the invalidation of the local option law somehow revived the dead contract for the remainder of its fifteen-year term. Brown essentially is asking us to reshape the course of events and impact those events had on the parties' contractual relationship by pretending that the unconstitutional statute and the local referenda never existed.

We reject Brown's argument and hold the contract was not revived by the subsequent invalidation of the local option law. This holding allows parties to conduct business and plan their affairs with some degree of certainty. Life goes on while judicial or legislative processes run their course. In the meantime, parties must arrange and conduct their business affairs under the law as it presently exists, regardless of a belief or hope the law will later be changed or invalidated.

We find this result to be consistent with precedent, including the recently decided case of *Bergstrom v. Palmetto Health Alliance*, 358 S.C. 388, 596 S.E.2d 42 (2004). In *Bergstrom,* we held that a 1977 statute, which modified charitable immunity as it applied to hospitals, was void *ab initio* when it was declared unconstitutional in 1992. As a result, the unconstitutional 1977 statute did not impact a suit brought against a hospital in 1998, given that the plaintiff's cause of action accrued in 1979 and must be based on the law as it existed. This result was proper because there were no rights and relationships that already had been determined and settled by past events and transactions.

> When a statute is found unconstitutional, we have recognized the general rule that an adjudication of [the] unconstitutionality of a statute ordinarily reaches back to the date of the act itself. . . . However, we also have recognized the necessity of upholding the validity of transactions or events that occurred before a statute was declared unconstitutional. . . . A close reading of the few South Carolina cases discussing the general rule indicates it is followed **except in special or unusual circumstances,** such as when doing so would create widespread havoc involving a great number of

people or transactions, spawn unnecessary litigation, or result in flagrant injustice.

*Bergstrom,* 358 S.C. at 399–400, 596 S.E.2d at 47–48 (citations and quotes omitted) (emphasis added).

In *Bergstrom,* we relied in part on the broad principles set forth in *Atkinson* regarding the impact of a finding that a statute is unconstitutional. The issue in *Atkinson* was whether a recently enacted federal statute revived certain state alcohol statutes, which previously had been deemed unconstitutional because they violated federal interstate commerce principles. In explaining why the state statutes were not revived or validated by the new federal act, the Court recited several principles emphasizing the void nature of an unconstitutional statute. *Id.* at 453, 78 S.E. at 519.

The *Atkinson* Court was faced with the issue of whether to grant an injunction to the plaintiff because the unconstitutional statutes were of no import, i.e., the Court had to evaluate the parties' *present* rights and duties in light of the void statutes. In contrast, the present case requires us to examine *past* events and transactions in determining, first, the impact a presumptively valid statute had on the parties' then-existing contractual rights and duties, and second, the impact a later finding of unconstitutionality had on the then-existing rights and duties. We recognize that the general principles expressed in *Atkinson*—though inadequate to resolve the issues in this case—are appropriate in other settings, and therefore we decline to overrule that decision.

In sum, this case presents a special or unusual circumstance in which we must uphold the validity of transactions or events that occurred before a statute was declared unconstitutional. The contract for video poker machines became void and unenforceable by either party as of July 1, 1995, due to referenda under the local option law and the revocation of the machine licenses by the Department of Revenue. Moreover, our finding that the local option law was unconstitutional—sixteen months after the parties' duty to perform under the contract was discharged according to a long-established principle of contract law—did not breathe life back into the contract.

## CONCLUSION

For the foregoing reasons, we REVERSE the court of appeals' decision and remand for entry of summary judgment in favor of White on Brown's breach of contract counterclaim. The trial court correctly ruled that the sole subject matter of the contract was the outlawed video poker machines. Neither party breached the contract, and therefore neither party is entitled to damages.

MOORE, WALLER, PLEICONES, JJ., and Acting Justice APHRODITE K. KONDUROS, concur.