616 S.E.2d 737

PRIMERICA LIFE INSURANCE COMPANY, Respondent,

v.

Ray K. INGRAM, Sr., Appellant.

No. 4017.

Court of Appeals of South Carolina.

Heard June 16, 2005.

Decided July 18, 2005.

Michael M. Jordan, of Sumter, for Appellant.

Robert H. Hood, Mary Agnes Hood Craig, D. Nathan Hughey, and Deborah H. Sheffield, all of Charleston, for Respondent.

STILWELL, J.:

Primerica Insurance Company, Inc. filed this action against Ray K. Ingram, Sr. seeking rescission of a life insurance policy and policy rider. Ingram counterclaimed for breach of con-

tract and bad faith refusal to pay insurance proceeds. The trial court granted summary judgment to Primerica. Ingram appeals. We reverse and remand.

## FACTS

Ray Ingram and his wife, Rachel, applied for and procured life insurance on each of their lives: a policy on Ingram's life in the amount of $223,000, and a policy rider on Rachel's life providing for a $104,000 death benefit. At the time of the application, Rachel had been diagnosed with and was being treated for cardiomyopathy. Less than two months after the policy and rider were issued, Rachel died from cardiac arrhythmia associated with cardiomyopathy. Ingram made a claim under the policy rider for the death benefit. Primerica denied Ingram's claim based on the failure to disclose Rachel's diagnosis and treatment for a heart condition.

Ingram and Rachel met with two agents of Primerica Life Insurance Company to complete the application. One of the agents filled out the application while questioning the Ingrams. The application included the following instruction:

The following questions must be answered for Primary, and if applicable, Spouse and Child(ren):

In the past 10 years have you been treated for or had any indication of:

2A. Chest pain, angina, heart murmur, heart attack, stroke, or other disorder of the heart or blood vessels?

To the right of the question, the application provided "yes" and "no" boxes for the applicant to check under two different columns—one labeled "Primary" and the other labeled "Spouse and/or Child." On the application, the "yes" box was checked under both the "Primary" column and the "Spouse and/or Child" column.

The application also requested "Details of Medical Questions 1 through 7." Under the details section, the application indicated Ingram suffered from chest pain and had been treated at Tuomey Hospital. In addition, the application indicated Aaron, the Ingrams' son, was born with a heart murmur. There were no details provided regarding Rachel.

Another section of the application contained the following questions:

In the past 3 years other than as answered above, have you:

Had any checkup or examination or been a patient in a hospital, clinic or other medial facility?

Had any electrocardiogram, x-ray or diagnostic test?

Been advised to have any diagnostic test, hospitalization or surgery which has not yet been done?

Again, to the right of each question, the application contained "yes" and "no" boxes under the headings of Primary and Spouse and/or Child. All three boxes under Primary were checked yes and all three boxes under Spouse and/or Child were checked no. The application also provided a space below for "Details of Medical Questions 8 through 10." Information regarding various procedures performed on Ingram's heart was provided. No information on Rachel was provided.

Ingram does not dispute the existence of his wife's heart condition at the time the couple executed the application. Nor does he dispute the absence of this information in the application. Additionally, Ingram admits that if this information had been disclosed, it would have been material to the risk to the insurer. However, Ingram argues he and Rachel disclosed this information to Primerica's agents, and the agents failed to include it in the application. Thus, he contends he did not intend to defraud Primerica.

Ingram testified in his deposition:

I brought up the heart condition, the micro, whatever the situation is. I still can't pronounce it. But I think she told them about, also, she had, in the past, [been] diagnosed with a lump in her breast.

\* \* \*

We went so far dealing with the heart micro prolapse, or whatever the name of the thing is, until she got up to went to try—she went and got her medicine bottle, the pills that she was taking.

In addition, Ingram testified his wife told the agents about her dizziness, the blurring in her eyes, and the heaviness she felt in her chest. Ingram stated his wife also told the agents

about her recent doctors' appointments and her doctor's name. Furthermore, Ingram and Rachel signed authorizations to obtain medical records.

The agent who took the information from the Ingrams testified in his deposition that Rachel did not inform him of her heart condition or related symptoms or treatment. However, he recalled Rachel bringing a pill bottle or prescription bottle into the room.

Ingram reviewed the application after the agents filled it in. In his testimony regarding whether he actually read the application prior to signing it, Ingram stated he did not read the application word-for-word. Rather, he "looked at the 'yes' or 'no' answers and kind of like just glanced across everything else and then we signed it." In regard to information about his wife on the application, Ingram testified:

> That particular part, I reviewed and when I reviewed, I reviewed the question and when I saw the 'yes' checked where it asked the question on 2A, I think it was, about the chest pains and whatever and the heart murmur and whatnot, when I looked under for spouse and/or children[,] when it [sic] saw it checked 'yes' I didn't observe the documentation that [the agent] wrote down on that. I was comfortable when I saw the 'yes' checked and that at that moment that we disclosed everything we needed to.

Primerica brought this action against Ingram seeking to have the policy and rider rescinded. Ingram answered and counterclaimed, alleging breach of contract and bad faith by Primerica. Primerica filed a motion for summary judgment on Ingram's bad faith claim and on its rescission claim. The trial court, in two separate orders, granted both of Primerica's motions. Ingram appeals the trial court's order awarding summary judgment on the rescission claim.

## STANDARD OF REVIEW

"When reviewing the grant of summary judgment, the appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP." *White v. J.M. Brown Amusement Co.*, 360 S.C. 366, 370, 601 S.E.2d 342, 344 (2004). Pursuant to Rule 56(c), SCRCP, summary judgment is appropriate when no genuine issue of material fact exists entitling

the moving party to judgment as a matter of law. *Id.* In determining whether a genuine issue of material fact exists, the trial court must view all evidence and inferences in the light most favorable to the non-moving party. *Id.* at 370–71, 601 S.E.2d at 344.

## LAW/ANALYSIS

■ Ingram argues the trial court erred in granting Primerica summary judgment on its rescission claim because the record contains evidence creating a genuine issue of material fact as to whether he and Rachel made a false statement with the intent to defraud Primerica. We agree.

■ In order to rescind an insurance policy on the ground of fraudulent misrepresentation, the insurer must show by clear and convincing evidence: (1) the statement was false; (2) the falsity was known to the applicant; (3) the statement was material to the risk; (4) **the statement was made with the intent to defraud the insurer;** and (5) the insurer relied on the statement when issuing the policy. *Strickland v. Prudential Ins. Co. of Am.*, 278 S.C. 82, 86–87, 292 S.E.2d 301, 304 (1982).

We find a genuine issue exists as to the Ingrams' intent to defraud Primerica. In *Lanham v. Blue Cross & Blue Shield of South Carolina, Inc.*, 349 S.C. 356, 563 S.E.2d 331 (2002), the South Carolina Supreme Court reviewed a trial court's grant of summary judgment in favor of an insurer on a claim for rescission. The court in *Lanham* considered the issue of whether a material question of fact existed as to the insured's intent to defraud the insurer. *Id.* The court determined: "Viewing the evidence in the light most favorable to Lanham, it cannot be said, as a matter of law, that he made a false statement in his application with the actual intent to deceive." *Id.* at 365, 563 S.E.2d at 335. The court stated that "whether [Lanham] made a false representation with the actual intent to deceive presents a jury question." *Id.*

Viewing the evidence in the light most favorable to Ingram, we likewise find a question of fact exists in this case as to whether Ingram and Rachel intended to defraud Primerica. Thus, the trial court erred in granting Primerica summary

270

judgment on its claim for rescission. Accordingly, the decision of the trial court is

**REVERSED and REMANDED.**

ANDERSON and WILLIAMS, JJ., concur.