THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Michael Roy Didato, Appellant,
v.
Palmetto Bay Owners Association, Inc.; Palmetto Bay Horizontal Property Regime; Gregory A. Wynn; and Eugene
Kransinki; Matt Bricker; Diane Peterkin; Nora Bess, and Jeremy White, Individually and as Directors of Palmetto Bay Horizontal Property Regime,
Respondents.
 
 
 

Appeal from Beaufort County
 Curtis L. Coltrane, Special Circuit Court Judge

Unpublished Opinion No. 2005-UP-630
Submitted November 1, 2005  Filed December 13, 2005

AFFIRMED

 
 
 
Jack D. Simrill, of Hilton Head Island, for Appellant.
Bob J. Conley and Thomas J. Keaveny, both of Charleston, for Respondents.
 
 
 

PER CURIAM:  Michael Roy Didato brought suit against Respondents, alleging breach of contract accompanied by a fraudulent act and slander of title.  He appeals the trial courts grant of summary judgment to Respondents, which found the claims were barred under the doctrine of accord and satisfaction.  We affirm.  
FACTS
In April of 1999, Michael Roy Didato bought a condominium unit at the Palmetto Bay Horizontal Property Regime (Regime).  Shortly after moving in, Didato switched the door on the mechanical closet adjacent to his living room and balcony with his front door.  Didato vacated the unit in February of 2001 and gave control of the unit to his sister, Madelaine Arata, and his father, Roy Didato.  
Gregory A. Wynn, the Regime Manager, wrote Didato on March 21, 2001, and informed him that the door exchange was prohibited.  Wynn contended the mechanical closet door was a common element of the Regime and the doors removal violated the by-laws of the Regime.  Wynn advised Didato to place the doors back in their original positions before March 31, 2001, or the Regime would have the door to the mechanical closet replaced at Didatos expense.  Didato responded by letter dated March 27, 2001, refusing to replace the doors and threatening to call the police if the Regime attempted to gain access to his unit.  
On April 9, 2001, Anne C. Marscher, an attorney for the Regime, wrote Didato and requested he replace the mechanical closet door.  The letter informed Didato that a special assessment of $50 a day would be levied against him and constitute a lien on his property if Didato failed to comply.  After Didato decided to sell the unit, Arata and her husband made extensive repairs to the unit.  Didato claims Arata replaced the mechanical door as one of the first tasks [she] attended to when [she] entered the unit on March 31, 2001.  The Regime contends it did not notice the doors had been replaced until May 31, 2001, and the Regime levied fines against the unit from May 10, 2001 until that date.  
On June 20, 2001, Didato signed a specific power of attorney making Arata his attorney-in-fact with respect to the sale of the unit.  On January 8, 2002, Marscher wrote Didato and demanded payment of $1,999.56 in fines and attorneys fees arising from the door exchange.  The Regime filed a lien on Didatos unit for that amount on January 9, 2002.  
Arata hired an attorney, H. Fred Kuhn, Jr., to get the lien removed.  On July 11, 2002, Marscher wrote Kuhn that [p]ursuant to [their] telephone conversation . . . Michael R. Didato will not be responsible for the $1,100 billed in fines.  The Regime executed a release and satisfaction of lien with respect to the unit on July 16, 2002.  Arata sold the unit on July 17, 2002 and paid the Regime the remainder of the amount owed.  Kuhn stated he was hired to remove the lien and agreed that the parties reached a resolution as to the lien.  Likewise, Arata agreed that the lien matter was resolved by [the] release and satisfaction of the lien.  
Almost a year later, Didato filed a complaint against the Regime for breach of contract accompanied by a fraudulent act and slander of title.  The Regime answered, alleging various defenses, including accord and satisfaction.  The Regime made a motion for summary judgment, asserting Didatos claims were barred under the doctrine of accord and satisfaction.[1]  The trial court granted the Regimes motion.  Didato filed a motion to reconsider and amend judgment, which the trial court denied.  This appeal followed.
STANDARD OF REVIEW
When reviewing the grant of summary judgment, the appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP.  Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law.  In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party.  White v. J.M. Brown Amusement Co., Inc., 360 S.C. 366, 370-71, 601 S.E.2d 342, 344 (2004) (citations omitted). 
LAW/ANALYSIS
I. Accord and Satisfaction
Didato asserts the trial court erred in granting summary judgment to the Regime finding Didatos claims were barred by the doctrine of accord and satisfaction.  We disagree.
The elements of an accord and satisfaction are the agreement between the parties to settle a dispute (the accord), and the payment of the consideration expressed in the accord (the satisfaction).  Fanning v. Hicks, 284 S.C. 456, 458, 327 S.E.2d 342, 343 (1985).  
Didato initially argues that because his sister and Kuhn made an agreement with the Regime, the Regime is precluded from asserting accord and satisfaction against Didato personally, pursuant to Brazell Brothers Contractors v. Hill, 245 S.C. 69, 138 S.E.2d 835 (1964).  In Brazell Brothers, the insurer for the Brazells paid Hill $475.00 in satisfaction of Hills claims against the Brazells arising from an automobile collision.  Id. at 72, 138 S.E.2d at 836.  When the Brazells asserted a claim against Hill arising from the same accident, Hill argued the agreement with the insurer constituted a compromise and settlement of all claims arising from the accident.  Id. at 72-73, 138 S.E.2d at 836.  Because South Carolina recognizes an automobile accident as creating two separate causes of action, the Supreme Court of South Carolina held [s]ince [the Brazells] cause of action was separate and distinct from [Hills cause of action], we perceive no legal impediment to settlement of it alone, leaving the Brazells untrammeled in the pursuit of their own claim, as to which the [insurance] carrier owed no responsibility and had no authority.  Id. at 74, 138 S.E.2d at 837 (emphasis added).  Unlike the insurance carrier in Brazell Brothers, Arata acted under a power of attorney giving her authority to do all lawful acts affecting the sale of real estate.  Arata had the authority to settle all claims arising out of the lien dispute.  According to the statements of Arata and Kuhn, Arata intended and agreed to finally settle this dispute.  Therefore, Didato is bound by this agreement.
Didato next argues the lien release evidences an intent to release only the claims the Regime had against Didato.  While the express language of the lien release indicates the Regime released all claims against Didato, it is evidence of the satisfaction, not the accord.  The lien release makes no mention of an agreement between Didato and the Regime.  In addition, it does not state what consideration for the release, if any, changed hands.  The agreement of the parties (the accord) occurred before the Release was executed, as evidenced by the letter from Marscher to Kuhn dated July 11, 2002.  The record shows only Aratas and Kuhns statements to evidence an agreement between the parties.  Therefore, viewed in a light most favorable to Didato, the evidence shows the parties agreed to settle all claims arising from the lien dispute (the accord) and, in satisfaction, the Regime executed a lien release.     
Even if we found the lien release provided evidence of an intention to release only the Regimes claims against Didato, we hold accord and satisfaction would still bar Didatos suit.  When the claims of the opposing parties are viewed as a single cause of action, it is plausible to import mutuality to any settlement between them, thus barring the right of either party to pursue the other, even though the release is, by its terms, unilateral.  Brazell Bros., 245 S.C. at 74, 138 S.E.2d at 837.  See also B&B Bail Bonds Agency of Connecticut Inc. v. Bailey, 770 A.2d 960, 963 (Conn. 2001) (Although the case law presents the more usual use of accord and satisfaction as a defense by the debtor against the creditor, it is evident that accord and satisfaction equally applies to both parties.).  Having agreed to surrender $1,225.60 in settlement of the Regimes claims against him, Didato cannot now argue those claims were fraudulent and deny that accord and satisfaction applies equally to bar his claims against the Regime.
II. The Mechanical Closet Door and the By-Laws
Didato argues a genuine issue of material fact exists as to whether the mechanical closet door is a common element of the Regime, and whether the exchange of the doors constituted a violation of the by-laws of the Regime.  These issues are not preserved for review.[2]  If the losing party has raised an issue in the lower court, but the court fails to rule upon it, the party must file a motion to alter or amend the judgment in order to preserve the issue for appellate review.  IOn, L.L.C. v. Town of Mt. Pleasant, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000).  The trial court in this case granted summary judgment solely on the grounds that Didatos claims were barred by accord and satisfaction.  Although Didato made a Rule 59(e) motion to alter or amend, he merely asked the trial court to make a ruling on accord and satisfaction and neglected to ask for a ruling on whether the doors were a common element or whether exchanging the doors violated the Regime bylaws.  Therefore, Didato has not properly preserved these issues for appeal.
CONCLUSION
For the foregoing reasons, the trial courts decision is
 AFFIRMED.
STILWELL, KITTREDGE, and WILLIAMS, JJ., concur.

[1] Although the Regime originally moved for summary judgment on two grounds, its memorandum in support of summary judgment asked for relief based only on accord and satisfaction.  
[2] Didato argues in his memorandum in opposition to summary judgment that the issue of whether Didato exercised ownership over limited common elements by switching the doors and whether this constituted a violation of the Master Deed and By-Laws of the Regime affects a determination of accord and satisfaction.  To the extent Didatos brief can be read to reassert this position, we disagree and find that whether the mechanical closet door is a limited common element and whether Didatos actions violated the by-laws of the Regime have no bearing on whether the parties agreed to settle the lien dispute.