# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Amanda Leigh Huskins and Jay R. Huskins, Petitioners,

v.

Mungo Homes, LLC, Respondent.

Appellate Case No. 2023-000452

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Richland County
DeAndrea G. Benjamin, Circuit Court Judge

---

Opinion No. 28245
Heard October 29, 2024 – Filed December 11, 2024

---

## REVERSED AND REMANDED

---

Beth B. Richardson, of Robinson Gray Stepp & Laffitte, LLC, Matthew Anderson Nickles, of Rogers, Patrick, Westbrook & Brickman, LLC, and Charles Harry McDonald, all of Columbia, for Petitioners.

Steven Raymond Kropski, of Charleston, for Respondent.

---

**JUSTICE HILL:** When Petitioners Amanda Leigh Huskins and Jay R. Huskins decided to buy a house from Respondent Mungo Homes (Mungo), Mungo presented them with its standard contract. The contract had an arbitration section that included this sentence:

> Each and every demand for arbitration shall be made within ninety (90) days after the claim, dispute or other matter in question has arisen, except that any claim, dispute or matter in question not asserted within said time periods shall be deemed waived and forever barred.

It is undisputed this clause shortened the statute of limitations for any claim to the ninety-day period. This, as Mungo concedes, ran afoul of S.C. Code Ann. § 15-3-140 (2005), which forbids and renders void contract clauses attempting to shorten the legal statute of limitations.

The Huskins later brought this suit against Mungo alleging various claims related to the sale. Mungo asked the circuit court to dismiss the Huskins' complaint and compel arbitration. The Huskins countered that the arbitration clause was unconscionable and unenforceable. The circuit court disagreed and granted the motion to compel arbitration. The Huskins appealed. The court of appeals held the clause of the arbitration provision limiting the statute of limitations was unconscionable and unenforceable but ruled the clause could be severed from the rest of the arbitration agreement. The court of appeals therefore affirmed the order compelling arbitration. *Huskins v. Mungo Homes, LLC*, 439 S.C. 356, 887 S.E.2d 534 (Ct. App. 2023). We granted certiorari and now reverse.

## I.

As the court of appeals noted, the contract does not include a severability clause or any hint that the parties intended for the arbitration agreement to stand if any part of it fell. We have held the absence of a severability clause may prevent a court from severing a contract. *Smith v. D.R. Horton, Inc.*, 417 S.C. 42, 50 n.6, 790 S.E.2d 1, 5 n.6 (2016). In general, whether an agreement can be modified so its remaining provisions survive depends upon what the parties intended. South Carolina law does not allow courts to rewrite contracts; subject to a few exceptions, courts will enforce agreements according to their terms. *Lewis v. Premium Inv. Corp.*, 351 S.C. 167, 171, 568 S.E.2d 361, 363 (2002). This is true even when the parties include a severability term. When they do not add such a term, we are reluctant to force one

upon them. This is in keeping with the law's faith in the liberty of contract. But devotion to that principle can work a cost to other interests. It can exact a needless forfeiture or cause unjust enrichment, tossing out the essence of a bargained for exchange over a trivial technicality. 2 E. Allan Farnsworth, *Contracts* § 5-09 (4th ed 2004).

The court of appeals held the clause limiting the statute of limitations was both unconscionable and unenforceable. We believe the better view is that the clause is unenforceable because it is void and illegal as a matter of public policy. *See White v. J.M. Brown Amusement Co.*, 360 S.C. 366, 371–72, 601 S.E.2d 342, 345 (2004) (contracts violating public policy expressed in statutory law are unenforceable). Because it is unenforceable, we need not decide whether it is also unconscionable. The only question we are left with is whether we should sever the illegal term and let the remainder of the arbitration agreement stand.

For centuries, the law has stricken illegal parts from contracts and upheld the legal parts, as long as the central purpose of the parties' agreement did not depend upon the illegal part. An early English case held that "if some of the covenants . . . are against law, and some good and lawful . . . [then] the covenants or conditions which are against law are void *ab initio*, and the others stand good." *Pigot's Case*, 77 ER 1177, 1179 (1614); *id.* at 1179, n. (c) (observing that "the statute is like a tyrant, when he comes he makes all void: but the common law is like a nursing father, makes void only that part where the fault is, and preserves the rest . . . [t]he general principal is, that if any clause, &.c. void by the statute or by the common law, be mixed up with good matter which is entirely independent of it, the good part stands, the rest is void").

This view was transported to America, s*ee United States v. Bradley*, 35 U.S. 343, 360–63 (1836), and is embodied in the Restatement (Second) of Contracts § 184 (1981). *See also* 8 *Williston on Contracts* § 19:70 (4th ed May 2024 Update).

We have followed this main current and interpreted contracts as severable if consistent with the parties' intent. *Packard & Field v. Byrd*, 73 S.C. 1, 6, 51 S.E. 678, 679 (1905); *Scruggs v. Quality Elec. Servs., Inc.*, 282 S.C. 542, 545, 320 S.E.2d 49, 51 (Ct. App. 1984).

The Restatement takes the further view that if only part of a contract term is unenforceable on grounds of public policy, a court may enforce the rest of the term as long as 1) "the performance as to which the agreement is unenforceable is not an

essential part of the agreed exchange" and 2) the party seeking to enforce the term "obtained it in good faith and in accordance with reasonable standards of fair dealing."  Restatement (Second) of Contracts § 184.  The severability analysis is the same regardless of whether a clause is unenforceable due to legislation, unconscionability, or some other public policy.  *See* Restatement (Second) of Contracts § 178 comment a.  The comments to § 184 emphasize that "a court will not aid a party who has taken advantage of his dominant bargaining power to extract from the other party a promise that is clearly so broad as to offend public policy by redrafting the agreement so as to make a part of the promise enforceable."  *Id*. at comment b.

Determining the intent of contracting parties can be a factual question, but here there is no question of fact left to be determined for three reasons.  First, there is no severability clause.  Second, there is a merger clause in the contract that declares the contract "embodies the entire agreement" and that it can only "be amended or modified" by a writing executed by both the Huskins and Mungo.  Third, Mungo has conceded, as it must, that this is an adhesion contract.  This means Mungo presented the contract as a "take it or leave it" proposition.  Mungo wrote the contract and deemed its terms nonnegotiable.  Huskins could not even edit it.  This forceful proof of Mungo's intent that the contract not be tinkered with convinces us that we should not rewrite it now.

In our view, the clause shortening the statute of limitations was material because it could determine the outcome of many disputes by calling time on any claim not raised within ninety days.  The clause was no mere "ancillary logistical concern" of the arbitration agreement; it was a brash push to accomplish through arbitration something our statutory law forbids.  *See Damico v. Lennar Carolinas, LLC*, 437 S.C. 596, 619–20, 879 S.E.2d 746, 759 (2022).  If we lifted out the clause, the legal statute of limitations period (which in most cases allows claims to be filed within three years of their reasonable discovery) would drop in.  This would rewrite the arbitration agreement to expand the statute of limitations by several orders of magnitude.  The whole point of an arbitration provision is to provide an alternative way to resolve disputes in a fair and efficient manner.  Yet Mungo designed its arbitration provision not to streamline the resolution of disputes but to reduce their number.  One sure way to reduce the number of disputes is to shrink the time in which they may ordinarily be brought under applicable law.  We conclude Mungo's manipulative skirting of South Carolina public policy goes to the core of the arbitration agreement and weighs heavily against severance.  *See Simpson v. MSA of*

*Myrtle Beach, Inc.*, 373 S.C. 14, 35 n.9, 644 S.E.2d 663, 674 n.9 (2007) (discussing severability); *see Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 337 (4th Cir. 2017) ("[W]hen a party uses its superior bargaining power to extract a promise that offends public policy, courts generally opt not to redraft an agreement to enforce another promise in that contract." (citing Restatement (Second) of Contracts § 184 comment. b)); Farnsworth, *supra*, at § 5-10; *Williston on Contracts* § 19:70.

As in *Damico*, we decline to salvage the arbitration agreement by severing out the statute of limitations clause. This is an adhesion contract, meaning it is highly doubtful the parties truly intended for severance to apply. *Damico*, 437 S.C. at 624, 879 S.E.2d at 761. The contract was for a consumer purchase of a new home, which brings into play public policy concerns *Damico* eloquently addressed. We have been steadfast in protecting home buyers from unscrupuolous and overreaching terms, and applying severance here would erode that laudable public policy. *See id.* at 624, 879 S.E.2d at 761–62 (holding unconscionable terms in arbitration agreement would not be severed despite presence of severability clause in contract, stating: "[b]ecause this is a contract of adhesion, and because the transaction involves new home construction, we decline to sever the unconscionable provisions for public policy reasons").

Mungo insisted upon an adhesion contract so its terms could not be varied and would stick. Mungo is stuck with its choice. Were we to hold otherwise, parties who impose standard form adhesion contracts on weaker parties would have no downside to throwing in blatantly illegal terms betting they will go unchallenged or, at worst, that courts will throw them out and enforce the rest. *See id.* at 622, 879 S.E.2d at 760 ("We are specifically concerned that honoring the severability clause here creates an incentive for . . . home builders to overreach, knowing that if the contract is found unconscionable, a narrower version will be substituted and enforced against an innocent, inexperienced homebuyer."); *see also McKee v. AT & T Corp.*, 191 P.3d 845, 861 (Wash. 2008) ("Permitting severability . . . in the face of a contract that is permeated with unconscionability only encourages those who draft contracts of adhesion to overreach. If the worst that can happen is the offensive provisions are severed and the balance enforced, the dominant party has nothing to lose by inserting one-sided, unconscionable provisions."); Omri Ben-Shahar, *Fixing Unfair Contracts*, 63 Stan. L. Rev. 869, 901–04 (2011) (explaining how market efficiency can be enhanced when courts refuse to replace overreaching contractual terms when the drafter is the sophisticated party, the terms deliberately and egregiously exceed well-established rules, and the drafter is a "repeat transactor").

We therefore decline to sever the void clause purporting to shorten the statute of limitations. We hold the entire arbitration agreement section of the contract is unenforceable. The decision of the court of appeals compelling arbitration is reversed. The remainder of the parties' contract is unaffected by our ruling, and the case is remanded to the circuit court.

**REVERSED AND REMANDED.**

**KITTREDGE, C.J., FEW, JAMES and VERDIN, JJ., concur.**