860 So.2d 1069 (2003)
Glenn Christopher GRIFFITH, Appellant,
v.
Patricia Y. GRIFFITH, Appellee.
No. 1D02-3229.
District Court of Appeal of Florida, First District.
December 9, 2003.
*1070 Crystal Collins Spencer of Emanuel, Sheppard & Condon, Pensacola, for Appellant.
Laura E. Keene of Beroset & Keene, Pensacola, for Appellee.
KAHN, J.
In this case, the former husband, Glenn Griffith, seeks review of a final judgment of dissolution entered by the trial court that denied the husband's motion to enforce a separation and property settlement agreement and went on to forge new child support provisions contrary to those included by the parties in their earlier agreement. The court also set aside the alimony provisions agreed upon by the parties. Because the order on review fails to set forth any sufficient cause to abrogate the parties' separation agreement, we must reverse and instruct the trial court to approve the agreement.
Although the relative financial situations of this husband and wife are important, the exact details are not. Appellee, Patricia Griffith, a successful medical doctor, earned an average salary in the three years before the dissolution of over twenty times that earned by the former husband. Over the course of their twelve-year marriage, the parties enjoyed a very comfortable lifestyle, commensurate with Dr. Griffith's professional success. Early in the marriage, the parties agreed that the husband would attend to the care and needs of the children rather than advancing his own earning ability.
Dr. Griffith filed a petition for dissolution in early 2000. During a second mediation session in January 2001, the parties reached an agreement as to alimony, child support, and custody. Again, although the exact numbers are not material, we note that the total financial obligations payable by Dr. Griffith to Mr. Griffith under the agreement are substantial. The parties agreed to joint custody of their three children, with neither designated a primary custodial parent. Dr. Griffith's attorney drafted a written document entitled "Separation and Property Settlement Agreement" to memorialize the settlement. Following execution by both parties, the lawyers filed the agreement with the court.
The matter then came on for an uncontested final hearing. At that hearing, Dr. Griffith apparently told the judge she was not sure if she could comply with the settlement agreement. The court declined to grant final judgment, prompting the husband to seek temporary support and also to file the motion to enforce the settlement agreement. When these matters *1071 came on for hearing, the trial court granted temporary support to Mr. Griffith, but again refused to enter a final judgment, concluding that an evidentiary hearing would be necessary to determine if the agreement was in the best interest of the minor children. The court then conducted a series of evidentiary hearings during the summer of 2002, after which it entered the order on appeal.
In the final judgment the trial court modified the parties' agreed-upon provisions for child support and rehabilitative alimony. The trial judge reasoned, "the court has not only the discretion and the prerogative, but a duty to scrutinize whether those provisions are in the best interest of the minor children." Based upon Dr. Griffith's testimony, the trial court determined that Dr. Griffith's previous income had resulted from her working in excess of forty hours a week and that Dr. Griffith would prefer to limit her professional week to forty hours to allow her time with the children. The court also focused upon a lawsuit pending against the wife's medical practice, acknowledging that although Dr. Griffith knew about the suit at the time she signed the agreement, she could not "knowingly perceive the outcome of the conclusion of the lawsuit." The court then refashioned Dr. Griffith's financial obligations based upon an exhibit presented by Dr. Griffith's office manager, projecting her income for the rest of 2003, as opposed to the average earnings from the years previous to the settlement agreement, which the court characterized as "aberrations." Despite the determination that the wife's previous earnings had been an aberration, the court refused to allow the husband to present information gleaned from the wife's payroll records concerning her actual 2002 income. The court made no findings as to the wife's actual earnings as of the date of the last hearing.
On appeal, Mr. Griffith challenges several rulings of the trial court. We take, as the primary challenges, the trial court's refusal to uphold the child support and alimony provisions of the settlement agreement. Because we reverse on these issues, we do not reach the two issues raised by Mr. Griffith concerning the trial court's failure to allow evidence of Dr. Griffith's current income and the trial court's admission of certain business records purporting to project Dr. Griffith's future income. Finally, because the effect of our order will be to reinstate the settlement agreement which provided that each party would assume his or her attorney's fees and costs, we do not disturb the trial court's failure to require the wife to be responsible for the husband's attorney's fees and costs.
In analyzing the trial court's refusal to enforce the child support and alimony provisions of the agreement, we must look first to the judge's conclusion that he had an obligation to scrutinize whether those provisions were in the best interest of the minor children. Apparently, and in short, the trial judge concluded that the minor children will be better served if their mother operated under a more abbreviated work schedule. This led the trial court to come up with a projected income figure for Dr. Griffith from which he reduced her child support obligation. The court also revisited the agreed-upon payments of rehabilitative alimony to Mr. Griffith.
Appellant does not contest the general rule in Florida that settlement provisions concerning child support, custody, and visitation must be reviewed and approved by the trial court as being in the best interest of the children. See Feliciano v. Feliciano, 674 So.2d 937 (Fla. 4th DCA 1996). This rule is based upon the concern that parents should not be allowed to bargain away valuable rights of minor children for reasons unrelated to the best interest of *1072 the children. Nevertheless, Florida respects the rights of parties to a dissolution to make their own agreement. As this court stated some years ago:
Separation agreements executed by husband and wife prior to divorce usually provide for payment to the wife of support or alimony; for support and custody of children; and for settlement of property rights existing between the parties. When such agreements are fairly entered into and are not tainted by fraud, overreaching or concealment, they will be respected by the courts.
Sedell v. Sedell, 100 So.2d 639, 642 (Fla. 1st DCA 1958).
Unescapable here is the fact that the trial court reduced Dr. Griffith's child support obligation upon the premise that, by working less, Dr. Griffith could spend more time with the children. The record, however, contains absolutely no evidence that Dr. Griffith has neglected her children or has failed to spend appropriate time with them. The action of the court was based upon facts the parties certainly knew, or should have known, at the time of the settlement agreement, and therefore amounted to an unjustified revisiting of the parties' contract. Although we recognize the trial court's discretion to approve matters involving custody, visitation, and support, our scrutiny of the present matter does not suggest the existence of any sufficient evidence to support the trial court's order disdaining the settlement and reducing Dr. Griffith's child support obligation.
We must also disapprove the trial court's failure to enforce the provisions concerning rehabilitative alimony. The agreement in question here provides, in part, with our emphasis supplied:
WHEREAS, in view of the parties' intentions to live separate and apart from each other permanently, the parties having reached an agreement through mediation with certified family law mediator Gary Work, the parties desire to settle equitably all matters of child custody, child support, alimony, division of property, and all other claims each may have against the other arising from the marital relationship; and
WHEREAS, the parties hereto have been fully, separately, and independently apprised and advised of their respective legal rights, remedies, privileges, and obligations arising out of the marriage relation and otherwise, and each having, in addition thereto, made independent inquiry and investigation with respect to all of the same, and each having been fully informed of the other's assets, property, holdings, income and prospects; and
WHEREAS, the parties hereto each warrant and represent to the other that they, and each of them, fully understand all of the terms, covenants, conditions, provisions and obligations incumbent upon each of them by virtue of this Agreement to be performed or contemplated by each of them hereunder, and each believes the same to be fair, reasonable, and to his or her respective individual best interest.
* * *
20. The parties acknowledge that they are entering into this agreement freely and voluntarily; that they have read each page of the agreement carefully before signing same; that they have ascertained and weighed all the facts and circumstances likely to influence their judgment herein; that they have sought and obtained legal advice independently of each other; that they have been duly apprised of their respective legal rights; that all the provisions hereof, as well as all questions are clearly understood and *1073 both parties assent to all provisions herein.
One could hardly overstate the definitive quality of these acknowledgments, particularly between very well-informed persons such as these parties, and particularly in the context of a mediation settlement agreement reached under the auspices of a certified family law mediator and reduced to writing by appellant's attorney.
Florida courts do not take lightly agreements made by husband and wife concerning spousal support. "A marital settlement agreement as to alimony or property rights which is entered before the dissolution of marriage is binding upon the parties." Dowie v. Dowie, 668 So.2d 290, 292 (Fla. 1st DCA 1996). The present order sets aside the alimony provisions without any indication that such provisions were involuntary or the product of fraud. Such an action is at odds with the wellestablished policy in Florida that settlement agreements are highly favored in the law. See Dorson v. Dorson, 393 So.2d 632, 633 (Fla. 4th DCA 1981). As with the child support provisions, we can find no sufficient reason to uphold the trial court's action in setting aside the alimony provisions.
As the trial judge apparently felt he had a virtually free hand to set aside the settlement agreement because the parties had minor children, we review briefly the law concerning marital settlement agreements. First, the construction of such settlement agreements is subject to the same rules of law as any other contract. See Zern v. Zern, 737 So.2d 631, 633 (Fla. 1st DCA 1999). Next, a trial court should follow the stipulations entered into by the parties, which are generally binding on the parties and the court. See Rhoden v. Rhoden, 538 So.2d 1274, 1275 (Fla. 1st DCA 1988). Finally, mediation and settlement of family law disputes is highly favored in Florida law. The Florida Family Law Rules of Procedure provide for mediation of all contested family matters, except as provided by law, and also provide for expedited mediation of family issues. See Fla. Fam. L.R.P. 12.740(b). Moreover, once a mediation agreement is reduced to writing, as was the case here, "[a]bsent a timely written objection, the agreement is presumed to be approved by counsel...." Fla. Fam. L.R.P. 12.740(f)(1). The standard for disregarding a settlement agreement between the parties is high. As the Florida Supreme Court has held:
[T]he fact that one party to the agreement apparently made a bad bargain is not a sufficient ground, by itself, to vacate or modify a settlement agreement. The critical test in determining the validity of marital agreements is whether there was fraud or overreaching on one side, or, assuming unreasonableness, whether the challenging spouse did not have adequate knowledge of the marital property and income of the parties at the time the agreement was reached.... If an agreement that is unreasonable is freely entered into, it is enforceable.
Casto v. Casto, 508 So.2d 330, 334 (Fla. 1987).
Of note here, the sole reason relied upon by the trial court for disregarding the settlement agreement was Dr. Griffith's claim of wanting to reduce her professional hours. Although Dr. Griffith initially brought up a law suit pending against her practice, by the time the dissolution was finalized, this other legal matter had been resolved favorably to Dr. Griffith. Apprised of these facts, the trial court failed *1074 to follow the law concerning enforcement of marital settlement agreements.
As we have previously observed, no valid reason related to the best interest of the children was ever raised to avoid the force and effect of the agreement. Accordingly, the court should have applied the general rule: "The inquiry on a motion to set aside an agreement reached through mediation is limited to whether there was fraud, misrepresentation in discovery, or coercion." Crupi v. Crupi, 784 So.2d 611, 612 (Fla. 5th DCA 2001). No claim has ever been made in the present case that either side lacked complete and accurate information concerning the personal situation and finances of the other spouse, and the agreement recites the contrary. Once husband and wife "are involved in full fledged litigation over dissolution property and support rights, they are necessarily dealing at arm's length and without the special fiduciary relationship of unestranged marital parties.... [T]here can be no question of the adequacy of knowledge when an adversarial party has had the opportunity of financial discovery under the applicable rules of procedure." Petracca v. Petracca, 706 So.2d 904, 911-12 (Fla. 4th DCA 1998). No legal cause exists to support the trial court's action in disregarding the parties' settlement agreement concerning spousal and child support. Should either spouse desire relief from this agreement, that spouse would be constrained by the law regarding modification and be held to the requisite showing of substantially changed circumstances. No such showing was ever attempted here and, accordingly, we conclude the settlement agreement must be enforced by the trial court. We therefore REVERSE the order on appeal and REMAND with instructions that the trial court enforce the marital settlement agreement.
WEBSTER and POLSTON, JJ., concur.