THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 Maureen
 Blackwell and Walter L. Blackwell, III, Appellants,
 
 
 
 
 

v.

 
 
 
 Janis Birket, Jeromy
 Birket, and Does 1 through 20, Defendants,
 
 
 
 Of whom Janis
 Birket and Jeromy Birket are the Respondents.
 
 
 
 
 

Appeal From Richland County
L. Casey Manning, Circuit Court Judge

Unpublished Opinion No.  2010-UP-330
 Submitted June 1, 2010  Filed June 28,
2010
Withdrawn, Substituted and Refiled
November 15, 2010

AFFIRMED 

 
 
 
 Maureen Blackwell and Walter L. Blackwell,
 III, both pro se, of Columbia, for Appellants.
 Joseph M. McCulloch, Jr., of Columbia, for
 Respondents.
 
 
 

PER CURIAM: Maureen Blackwell and Walter L. Blackwell, III
 (Grandmother and Grandfather, collectively Grandparents) appeal from the
 circuit court's dismissal of their complaint with prejudice for lack of subject
 matter jurisdiction and failure to state facts sufficient to constitute a cause
 of action.  We affirm.[1]  
FACTS
Grandparents are the
 biological parents of Janis Birket (Mother).  Mother and Jeromy Birket (Father) are married and have two
 children: Daughter and Son (Granddaughter and Grandson, collectively Children). 
 Mother and Father have sole custody of Children.  At the time Grandparents
 filed their complaint in circuit court, Granddaughter was six years of age and
 Son was seven months old.  
Previously,
 Grandparents, Mother, Father, and Granddaughter all resided in California.  For
 an unspecified amount of time, Granddaughter either resided in Grandparents'
 home or lived within close proximity to Grandparents.  As a result, Granddaughter
 visited Grandparents often, and Grandparents believed "a strong bond of
 love and affection was formed between [Granddaughter] and [Grandparents] during
 that time." 
Thereafter, Mother
 and Father decided to move to South Carolina and allegedly requested
 Grandparents assistance in moving.[2] 
 As a result, Grandparents maintained they entered into an oral contract with
 Mother and Father whereby Grandparents agreed to the following: (1) sell their
 home "of approximately [thirty] years" in California; (2) name Mother
 as the listing agent for the home; (3) sell Grandfather's business; (4) sell
 Grandparents' investment property; (5) move to South Carolina with
 Granddaughter, "leaving behind everything in their lives, including
 friends, belongings and associations that they had accumulated over sixty years;"
 (6) give Mother a sum certain of money from a lawsuit Grandfather negotiated;
 (7) purchase a home in South Carolina within close proximity to Mother and
 Father's home "and cause a real estate commission to be paid to [Father]
 for that purchase;" (8) provide child care services for Mother and Father
 whenever needed; and (9) be a part of Granddaughter's life.  In exchange,
 Mother and Father allegedly agreed to (1) "provide an environment in which
 [Grandparents] could maintain a close and loving relationship with
 [Granddaughter] and allow [Grandparents] to have unfettered contact with [Granddaughter]";
 (2) continue to allow Grandparents to have the same amount of contact with Granddaughter
 as had been previously established, including the celebration of holidays and
 special events; (3) utilize Grandparents for child care services for
 Granddaughter; and (4) perform real estate brokerage services for the sale of
 Grandparents' California home at no charge.[3] 
 Grandparents assert as an inducement to enter the contract, Mother and Father
 promised Grandparents they would remain an integral of Granddaughter's life.  
In May 2007, Mother
 and Father made the decision to stop allowing Grandparents to have contact with
 Granddaughter.  As a result, on March 27, 2008, Grandparents filed a complaint
 alleging breach of contract (specific performance), breach of contract
 (recission), breach of contract accompanied by a fraudulent act, intentional
 infliction of emotional distress (IIED), negligent infliction of emotional
 distress, breach of contract (damages), and tortious interference with a
 contract.  Thereafter, Grandparents filed
 an amended complaint to include an additional cause of action for breach of
 contract (constructive trust).[4] Subsequently,Grandparents
 dismissed their first cause of action for breach of contract (specific
 performance).  Not only were Mother and Father named defendants, but Grandparents
 also named "Does 1 thru 20" as defendants responsible for enticing
 Mother and Father to breach the alleged oral contract.  
In their
 complaint, Grandparents alleged they fully performed under the contract;
 however, they maintained Mother and Father did not perform.  Specifically,
 Grandparents contended Mother and Father had "prevented all meaningful
 contact" between themselves and Granddaughter since May 2007. 
 Additionally, Grandparents asserted Mother and Father's conduct negatively
 impacted their relationship with Granddaughter.  
The same day
 Grandparents filed their complaint, Grandparents also filed a motion for a
 temporary restraining order prohibiting Mother and Father from disclosing the
 lawsuit or the underlying dispute to Granddaughter.  In their motion,
 Grandparents asserted the "central issue" in the lawsuit was their
 ability to have a relationship with Granddaughter.
During the
 pendency of the action in circuit court, Grandparents continued attempts of
 enforcing the alleged contract by contacting Mother and Father as an attempt to
 gain access to Granddaughter.  During this time, Grandparents did not attempt
 to develop any relationship with Grandson.  Unbeknownst to Mother and Father,
 Grandmother also volunteered at Granddaughter's school.  Additionally,
 Grandparents drove past Mother and Father's house.  Eventually, counsel for
 Mother and Father requested Grandparents cease any efforts to contact or
 communicate with Mother and Father.  However, Grandfather responded, stating he
 would "continue contact . . . as we deem appropriate.  Especially since we
 have grave concerns for their physical safety."  According to Mother,
 Grandparents offered to "resolve" the law suit if Mother and Father
 agreed to visitation.   Further, Grandfather stated their "goal is simply
 to be a part of [Mother] and [Granddaughter's] lives.  If you no[] longer want
 us in your life, so be it.  Should you choose to abandon us that decision
 should not be forced on [Granddaughter]. . . . However, if you are determined
 to exclude us, you may be certain we will not simply go away." 
 Grandfather mailed numerous letters to Mother indicating Grandparents' continued
 desire to be a part of Granddaughter's life and demonstrated an unwillingness
 to accept a refusal on their part.  Thereafter, Mother and Father filed a
 motion for a temporary restraining order and injunction, which the circuit
 court granted.  
On May 6, 2008,
 Mother and Father filed a motion to dismiss Grandparents' complaint pursuant to
 Rule 12(b)(1) and (6), SCRCP.  At the hearing, Grandparents made a motion to
 dismiss their first cause of action for specific performance.  As a result, the
 only remaining causes of action involved alleged money damages. At the hearing,
 Grandparents acknowledged South Carolina law prevented the enforcement of a
 contract for visitation.  
Following a
 hearing, the circuit court dismissed all of Grandparents' causes of action.  On
 October 14, 2008, the circuit court issued an order clarifying it did not have
 jurisdiction to order grandparent visitation.  The  circuit court then found
 Grandparents failed to state facts sufficient to constitute a cause of action
 for breach of contract and intentional infliction of emotional distress.  As a
 result, the circuit court dismissed Grandparents' complaint with prejudice. 
 This appeal followed. 
LAW/ANALYSIS
I. 
 Jurisdiction
Grandparents
 argue the circuit court erred in finding it lacked subject matter
 jurisdiction.  We disagree.  
Family courts are
 of limited jurisdiction.  See S.C. Code Ann. § 63-3-530 (2010).  Family courts have jurisdiction over
 grandparent visitation only if parents are deceased, divorced, or living
 separate and apart.  S.C. Code Ann. § 63-3-530(33)
 (2010).  However, the family court
 generally does not have jurisdiction to enforce contractual agreements not
 incorporated or merged into court orders.  Lighty v. S.C. Dep't of Soc.
 Servs., 285 S.C. 508, 510, 330 S.E.2d 529, 530 (1985).  Rather, the circuit court is vested with
 jurisdiction over an action based upon a contract.  Id. at 509, 330
 S.E.2d at 530.  Further, the award of
 money damages is "beyond the jurisdiction" of the family court.  Peake
 v. Peake, 284 S.C. 591, 593, 327 S.E.2d 375, 376 (Ct. App. 1985); see
 also Thompson v. Ballentine, 298 S.C. 289, 292, 379 S.E.2d 896,
 898 (1989) (explaining that section 63-3-530 of the South Carolina Code (2010)
 does not give the family court authority to award money damages).
We agree with the
 circuit court's finding it lacked jurisdiction to order grandparent visitation because
 the family court has jurisdiction over grandparent visitation.  Moreover, Grandparents admitted they were not attempting to enforce visitation
 rights and Grandparents dismissed their demand for specific performance of the alleged
 contract.  Rather, Grandparents' complaint alleged breach of contract and
 IIED.  All of  Grandparents'
 causes of action requested the following forms of relief: (1) recission of the contract, (2) damages, and (3) the
 imposition of a constructive trust.  All of these are remedies within the
 circuit court's jurisdiction.  Thus, these actions were properly before the
 circuit court when the circuit court reviewed Grandparents breach of contract
 and IIED claims on the merits.
II.  Breach of Contract
Grandparents
 argue they pled all the essential elements of breach of contract, and the
 circuit court erred in dismissing their complaint pursuant to Rule 12(b)(6),
 SCRCP.  We disagree. 
The circuit court may dismiss
 a claim when the defendant demonstrates the plaintiff has failed "to state facts sufficient to
 constitute a cause of action" in the pleadings filed with the court.  Rule
 12(b)(6).  The trial court's ruling on a Rule 12(b)(6) motion "must be
 bottomed and premised solely upon the allegations set forth by the plaintiff."  Williams v. Condon, 347 S.C. 227, 232-33, 553 S.E.2d 496, 499-500 (Ct.
 App. 2001).  The motion will not be sustained if the facts alleged and the
 inferences reasonably deducible from the pleadings would entitle the plaintiff
 to relief on any theory of the case.  Id.  "The question to be
 considered is whether, in the light most favorable to the plaintiff, the
 pleadings articulate any valid claim for relief."  Id.  This court
 applies the same standard of review as the trial court in reviewing the dismissal of
 an action pursuant to Rule 12(b)(6).  Cole Vision Corp. v. Hobbs, 384 S.C. 283,
 287, 680 S.E.2d 923, 925 (Ct. App. 2009).  
"The general rule, well
 established in South Carolina, is that courts will not enforce a contract when
 the subject matter of the contract or an act required for performance violates
 public policy as expressed in constitutional provisions, statutory law, or judicial
 decisions."  White v. J.M. Brown Amusement Co., 360 S.C. 366, 371,
 601 S.E.2d 342, 345 (2004); see also Batchelor v. Am. Health
 Ins. Co., 234 S.C. 103, 112, 107 S.E.2d 36, 40 (1959) (noting that
 contracts violating public policy as expressed in constitutional provisions,
 statutes, or judicial decisions are void).  Public policy suggests that "South
 Carolina, as parens patriae, protects and safeguards the welfare
 of its children."  Mr. T v. Ms. T, 378 S.C. 127, 138, 662 S.E.2d
 413, 419 (Ct. App. 2008) (quoting Cook v. Cobb, 271 S.C. 136, 145,
 245 S.E.2d 612, 617 (1978)).  "This principle is founded upon the state's
 duty to protect those of its citizens who are unable because of infancy to take
 care of themselves, and on the right of the child, as citizen and ward, to the
 state's protection."  Id.  
Florida has held: "It is
 well established that a court is not bound by an agreement of parents regarding
 child support, custody, or visitation."  Higgins v. Higgins, 945
 So. 2d 593, 596 (Fla. Dist. Ct. App. 2006); see also Taylor v.
 Kennedy, 649 So. 2d 270, 271-72 (Fla. Dist. Ct. App. 1994) (declining
 to recognize claims for specific performance of a contract for visitation in
 favor of a non-parent or a child's right to petition a Florida court to order
 his or her parent to permit visitation with third parties).  The  Higgins court
 explained: "One important reason for this principle is that the court must
 guard against the possibility that a parent might bargain away valuable rights
 of a child for reasons unrelated to the child's best interests."  945 So. 2d
 at 596.  Although not pertaining to visitation, Mississippi has held:  "The
 custody of a child is not subject to being traded, or possession granted or
 withheld as if it were a chattel, and neither is its custody subject to being
 used as a lever to gain a favorable bargaining position as to the division of
 property between the parents."  Reno v. Reno, 176 So. 2d 58,
 62 (Miss. 1965).
We recognize the difficult
 situation Grandparents are in because for reasons not set forth in the Record
 on Appeal, Mother and Father have determined that Granddaughter should no
 longer have contact with Grandparents.  Although this is not a family court
 action, the heart of the alleged contract involves Grandparents attempt to have
 access to Granddaughter, and we are mindful that in family court there is a
 presumption that a fit parent's decision regarding grandparent visitation is in
 a child's best interests.  See Marquez v. Caudill, 376 S.C. 229,
 248, 656 S.E.2d 737, 747 (2008) ("[I]t is well-settled that parents
 have a protected liberty interest in the care, custody, and control of their
 children and that this is a fundamental right protected by the Due Process
 Clause. . . . [T]he court must give 'special weight' to a fit parent's decision
 regarding visitation.  A court considering grandparents visitation over a
 parents objection must allow a presumption that a fit parents decision is in
 the child's best interest.").  The South Carolina Legislature has specifically
 limited the circumstances in which a grandparent is entitled to visitation and
 none of those are present in this case.  See S.C. Code Ann. §
 63-3-530(A)(33) (2010) (explaining the family court may "order visitation
 for the grandparent of a minor child where either or both parents of the minor
 child is or are deceased, or are living separate and apart in different
 habitats . . . ).  As a result, Grandparents are attempting to enforce a
 contract that involves the exchange of money, among other things, as
 consideration to have "unfettered contact" with Granddaughter.  
While it is unfortunate
 relations among family members have degenerated to this point, allowing such a
 contract to be enforceable would be contrary to this state's interest in
 protecting children and would permit a parent to bargain away valuable rights
 of a child for reasons unrelated to the child's best interest.  As a result,
 allowing grandparents and parents the ability to contract away rights not
 expressly authorized by law would contravene public policy.  Accordingly,  we
 find the contract is unenforceable because it violates public policy, and the
 circuit court did not err in finding the complaint failed to state facts
 sufficient to constitute a cause of action.  

II. 
 Intentional Infliction of Emotional Distress 
Grandparents
 contend they stated sufficient facts to constitute an action for IIED.  We
 disagree. 
In order to recover for the IIED,
 a plaintiff must establish:

 (1) the
 defendant intentionally or recklessly inflicted severe emotional distress or
 was certain or substantially certain that such distress would result from his
 conduct; (2) the conduct was so extreme and outrageous as to exceed all
 possible bounds of decency and must be regarded as atrocious, and utterly
 intolerable in a civilized community; (3) the actions of the defendant caused
 the plaintiff's emotional distress; and (4) the emotional distress suffered by
 the plaintiff was severe so that no reasonable man could be expected to endure
 it.  

Ford v. Hutson, 276 S.C. 157, 162, 276 S.E.2d 776, 778-79 (1981)
 (internal citations and quotation marks omitted).  
Grandparents alleged in their
 complaint Grandfather "is disabled, of frail and ill health, and is easily
 upset and injured."  Further, they alleged Mother and Father

 engaged
 in an intentional course of conduct by which they intended to physically harm
 [Grandfather] and which did, in fact, harm [Grandfather].  Such conduct
 included breaking [Grandfather's] heart by alienating [Granddaughter] and
 keeping her from him and preventing him from enjoying a loving relationship
 with [Granddaughter].  As a result, [Grandfather] suffered extreme emotional
 distress and physical harm.  

Additionally, Grandparents stated
 Mother and Father's conduct was "extreme and outrageous" and the
 "intentional acts exceeded the bounds allowed in a civilized
 society."  
Based solely on the facts alleged
 and the inferences reasonably deducible from the complaint, we find that Grandparents
 are not entitled to relief.  Mother and Father decided Grandparents should not
 be allowed to visit their Granddaughter, and we do not find this amounts to
 extreme and outrageous conduct that is utterly intolerable in a civilized
 community and so severe that no reasonable man could be expected to endure it.  See Hutson, 276 S.C. at 162, 276 S.E.2d at 778-79.  As a result,
 Grandparents failed to state facts sufficient to constitute a cause of action
 for IIED, and the circuit court did not err in dismissing this cause of action.
   
III.  Dismissal With
 Prejudice
Grandparents assert their complaint
 should not have been dismissed with prejudice.  We disagree. 
Grandparents cannot possibly
 amend their circuit court complaint to state facts sufficient to constitute a
 cause of action because the alleged contract was in violation of public
 policy.  See Spence v. Spence,  368 S.C. 106, 129, 628 S.E.2d
 869, 881 (2006) (explaining that typically a plaintiff is given an
 opportunity to file and serve an amended complaint; however "if it appears
 to a certainty that no relief can be granted under any set of facts that can be
 proved in support of its allegations" the complaint may be dismissed with
 prejudice).  Accordingly, the circuit court did not err in dismissing
 Grandparents' complaint with prejudice.  
IV.  Brokerage Services
Grandparents maintain the circuit
 court erred in finding the promise concerning brokerage services violated the
 statute of limitations and that brokerage agreement contained an arbitration
 clause.  However, we find Grandparents abandoned this issue on appeal because
 Grandparents failed to cite any authority in support of this contention.  See Hunt v. S.C. Forestry Comm'n, 358 S.C. 564, 573, 595 S.E.2d 846,
 851 (Ct. App. 2004) ("Issues raised in a brief but not supported by
 authority are deemed abandoned and will not be considered on appeal."); see
 also In re McCracken, 346 S.C. 87, 92, 551 S.E.2d 235, 238 (2001)
 ("A bald assertion, without supporting argument, does not preserve an
 issue for appeal.").
CONCLUSION 
Based on the foregoing, the
 circuit court's order is
AFFIRMED.[5]
KONDUROS, GEATHERS, and
 LOCKEMY, JJ., concur.         

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.
[2] The residential listing agreement for Grandparents'
 property in California indicates their property was listed for sale on December
 5, 2004, and the seller's closing statement reflects the closing for the
 property occurred on February 7, 2005.  
[3] We note the residential listing agreement states
 Mother, as broker, received five percent of the listing price.  
[4] Grandparents also filed numerous lis pendens on various real property Mother and Father either owned or were
 associated with.   
[5] This court need not address Grandparents' remaining
 arguments because the determination of the contract issue is dispositive.  See Futch v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518
 S.E.2d 591, 598 (1999) (finding this court need not address issues when its
 determination of a prior issue is dispositive).