NORTHCUTT, Judge.
Mark Adams petitioned to dissolve his marriage to Laurette Adams in June 2008. The parties later mediated their disputes and reached an agreement settling their “respective rights, duties, and obligations regarding property.” They could not agree on child support and alimony, however, so they went to trial on those issues. The trial court entered a thorough posttrial order, which included an award of permanent, periodic alimony to Mrs. Adams in the amount of $185 per month. On appeal, Mr. Adams challenges a provision of the final judgment that awards Mrs. Adams an additional payment of $15,000. We reverse that award because, as we shall explain, it was either an improper modification of the parties’ property settlement agreement or an unsupported award of alimony.[1]
We need not describe all the trial evidence in detail. Suffice it to say, the record supported the permanent, periodic alimony award to Mrs. Adams. That award essentially equalized the parties’ monthly incomes. Mrs. Adams also sought lump-sum alimony and rehabilitative alimony, but the court denied those *342 requests and she has not appealed those decisions.
The evidence relevant to the issue before us concerns a $30,000 payment made to Mrs. Adams in late 2007. In November of that year she was severely injured in a car accident. She was in a coma for some time and was hospitalized until the latter part of December 2007. During her hospitalization, her insurance company sent her a check for $30,000. At trial, Mr. Adams acknowledged that in order to cash the check, he took his comatose wife’s hand and marked an “X” on a power of attorney. He testified that he used the insurance money to pay his wife’s medical bills, to repay her student loans, and to pay off his car loan. All these payments were made before the parties separated. Mrs. Adams did not present any evidence that cast doubt on the credibility of Mr. Adams’s testimony about his use of the insurance proceeds.
The trial court discussed the $30,000 insurance payment in the portion of the final judgment analyzing the factors used to determine whether permanent, periodic alimony should be awarded. In reviewing the parties’ financial resources, including the assets and liabilities distributed to each, the court expressed its concern that Mr. Adams cashed the $30,000 check while his wife was in a coma. For that reason, the court found it appropriate that Mr. Adams repay Mrs. Adams half that amount.
The Adamses’ property settlement agreement, which was intended to be a complete division of their marital and non-marital property, did not address the $30,000 insurance payment. The money was gone by the time the couple separated, and no one disputes that it was used to pay marital obligations. The agreement, which was incorporated into the final judgment, contained a section entitled “Division of Other Assets and Liabilities.” The payment from the insurance company was not mentioned. If Mrs. Adams believed her husband’s actions concerning the check were untoward and that she was entitled to be reimbursed, that property should have been addressed in the settlement agreement.
A pure property settlement agreement like the one in this case is unmodifiable. See Draper v. Draper, 604 So.2d 946, 947 (Fla. 2d DCA 1992). Here, the circuit court essentially modified the Adamses’ agreement by requiring Mr. Adams to divest himself of property. The parties’ division of their assets and liabilities was not even an issue at trial. Moreover, because the insurance proceeds were applied to marital obligations, Mrs. Adams had already received the benefit of her share of the funds. The trial court abused its discretion in this regard, and we must reverse. See Griffith v. Griffith, 860 So.2d 1069 (Fla. 1st DCA 2003).
Even if we were to view the payment as support rather than as a division of property, the trial court’s decision could not be sustained. The court discussed the $15,000 payment in the section of the final judgment addressing permanent, periodic alimony, yet it never characterized what sort of alimony it might be.
Most importantly, Mrs. Adams did not establish her need for any alimony over and above the permanent, periodic alimony she was awarded. For example, bridge-the-gap alimony may be used to assist a party in transitioning from married to single life. But here the evidence showed that Mrs. Adams was living in a house owned by her father, was paying a reasonable rent, and was employed. See Borchard v. Borchard, 730 So.2d 748, 753 (Fla. 2d DCA 1999). And the court specifically rejected the appropriateness of *343 lump-sum alimony because Mrs. Adams failed to prove either an entitlement to such an award or her husband’s ability to pay it. Finally, the court found Mrs. Adams’s proof lacking on her request for rehabilitative alimony.
Whether the $15,000 award is characterized as property or support, the trial court abused its discretion in requiring Mr. Adams to make this payment to his former wife. We reverse the portion of the final judgment that requires him to do so. We affirm the final judgment in all other respects.
Affirmed in part, reversed in part, and remanded.
DAVIS and SILBERMAN, JJ., Concur.

. Mr. Adams also challenges the court’s computation of child support, noting that the most "serious" problem was "that the court left out the true amount of alimony it ordered in its calculations of child support.” Because we are reversing the requirement that he pay Mrs. Adams the $15,000, we affirm the child support award without further discussion.